## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARCEL NICOLE INGRAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION NO. 2:22-cv-1594** |
| **THE HONORABLE GEORGE** | ) | |
| **DUNBAR, in his individual capacity, THE** | ) | **Judge Marilyn J. Horan** |
| **HONORABLE ERIC DAVANZO, in his** | ) | |
| **individual capacity, JACOB SMELTZ, in his** | ) | |
| **individual capacity, JORDAN GOUKER, in his** | ) | |
| **individual capacity, WILLIAM SCHALLER,** | ) | |
| **in his individual capacity, LISA ZAUCHA, in** | ) | **JURY TRIAL DEMANDED** |
| **her individual capacity, ALICIA MCGHEE, in** | ) | |
| **her individual capacity, JILL VECCHIO, ESQ.,** | ) | |
| **in her  individual capacity; and CANDICE** | ) | |
| **MITCHELL, in her individual capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### I. Introduction and Legal Standard

**Introduction**

Ms. Ingram properly pled a First Amendment retaliation claim regarding her firing for reporting toxic mold.  The presence of toxic mold in a government office, especially one open to the public, is a matter of public concern.  It defies logic and precedent to argue otherwise, and the Court is without the benefit of a fully developed record to rule on this issue.  Also, the First Amended Complaint details how testing and reporting on the presence of mold are not part of Ms. Ingram's official job duties.  The question of Ms. Ingram's job duties is one of fact that cannot be decided on Defendants' Motion.

Next, Ms. Ingram properly pled a retaliation claim under the Whistleblower Law. Defendants' immunity, abstention, and pleading arguments do not hold up under minimal

1

scrutiny.  First, Eleventh Amendment immunity does not apply to suits against state officials in their **individual** capacities.  Second, abstention under *Colorado River* is not warranted because Ms. Ingram's federal and state court actions are not parallel, and exceptional circumstances do not exist to merit abstention.  Finally, the First Amended Complaint contains detailed factual allegations regarding the existence of wrongdoing, Ms. Ingram's reports of that wrongdoing, and Defendants' retaliation.  Additionally, Ms. Ingram cited the legal provisions that were violated, which is not required at this stage of the case.  As a result, Ms. Ingram went above and beyond the required pleading standards.  Also, the Court does not have a fully developed record to rule on the issues of fact raised by Defendants.

Through their Motion to Dismiss, Defendants seek to circumvent the discovery process in asking the Court to rule on issues that cannot be decided at this stage.  Defendants also fail to cite controlling precedent relevant to Ms. Ingram's claims and attempt to inject facts into the record, which cannot be considered.  Due to the premature and unsupported issues that Defendants raise, Ms. Ingram respectfully requests that the Court deny Defendants' Motion.

**Legal Standard**

A federal court complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Even after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "federal courts require notice pleading, as opposed to a heightened standard of fact pleading." *Depelligrin v. A&L Motor Sales, LLC*, No. 11-1579, 2012 WL 3073182, at *2 (W.D. Pa. July 27, 2012).

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn

therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citation omitted). The court should undertake a three-part analysis, including "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Id.* Part three of this test "requires this Court to consider the specific nature of the claim(s) presented and to determine whether the facts pled to substantiate the claims are sufficient to show a 'plausible claim for relief.'" *Depelligrin*, 2012 WL 3073182 at *2 (quoting in part *Iqbal*, 556 U.S. at 679).

While a complaint must contain sufficient factual matter to show a claim is facially plausible, a plaintiff still "is not required to establish the elements of a *prima facie* case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009) (citation omitted).

## II. Argument

### A. Ms. Ingram's factual allegations that Defendants fired her in retaliation for her reports of toxic mold state a claim of First Amendment retaliation.

Ms. Ingram's speech regarding the presence of toxic mold in the District Office, a public office space, touched on a matter of public concern. "Quite simply, the statements regarding exposure of public employees to hazards such as asbestos can be fairly considered as relating to [a] matter of . . . concern to the community." *Brennan v. Norton*, 350 F.3d 399, 415 (3d Cir. 2003) (citation omitted). "Due to health and safety concerns, the presence of mold is a topic of great concern to the community…" *Moffitt v. Tunkhannock Area Sch. Dist.*, 160 F. Supp. 3d 786, 797 (M.D. Pa. 2016) (citation omitted). When drawing all reasonable inferences in analyzing a motion to dismiss, it is "reasonable to infer, for example, that public speech about

safety or asbestos hazards is a matter of public concern." *Bell v. Ostrow*, 45 F. App'x 152, 154 (3d Cir. 2002).

Despite Ms. Ingram's reports of toxic mold, made to protect herself, her colleagues, and the public, [ECF No. 8] at ¶41, Defendants attempt to reclassify her motives as solely self-interested. As part of that effort, Defendants seek to infuse their own facts for consideration, through their Motion, to question Ms. Ingram's motives. Those extraneous facts may not be considered because factual determinations cannot be made in deciding a motion to dismiss. *Flora v. Cty. of Luzerne*, 776 F.3d 169, 175 (3d Cir. 2015). Additionally, even if private concerns motivated Ms. Ingram's speech, she is still entitled to protection if that speech addressed "a matter that concerns the public as well as the speaker." *Brennan*, 350 F.3d at 412. "[T]he speaker's motive, while often a relevant part of the context of the speech, is not dispositive in determining whether a particular statement relates to a matter of public concern." *Id*. at 413 (citation omitted). As demonstrated above, the presence of a toxic substance in a public workplace is a matter of public concern. In *Brennan*, the court held that the presence of asbestos in a fire station was a matter of public concern, even though the fire station was not open to the public. *Id*. at 415. In Ms. Ingram's case, the District Office is open to the public, [ECF No. 8] at ¶14, which makes the exposure to toxic mold an even greater public concern than that raised in *Brennan*.

In support of their argument, Defendants erroneously cite *Sanguigni v. Pittsburgh Board of Public Education*, 968 F.2d 393, 399 (3d Cir. 1992), for the proposition that complaints about safety matters are not matters of public concern. The plaintiff in *Sanguigni* never raised safety concerns. Instead, the plaintiff made statements solely regarding employee morale. *Id*.

Defendants' reliance on *Gaj v. United States Postal Service*, 800 F.2d 64 (3d Circ. 1986)

is also misplaced.  In *Gaj*, the plaintiff admitted in an affidavit that his "safety complaints were not made to protect the interest of other employees but were made to protect [himself]."  *Id*. at 67.  Paired with the plaintiff's admission, the court indicated that the evidence in the record showed that the plaintiff's statements did not rise to the level of public concerns.  *Id*.  Unlike *Gaj*, Ms. Ingram plead that her statements were made to benefit the public, [ECF No. 8] at ¶41, and there is no developed record in this matter.

Similarly, *Todora v. Buskirk*, 96 A.3d 414 (Pa. Commw. Ct. 2014) was decided on a motion for summary judgment, after the completion of discovery.  *Todora* is also easily distinguished on a factual basis.  The plaintiff in that case sought to classify the filing of a personal injury lawsuit related to mold exposure as protected speech.  *Id*. at 419.  The plaintiff filed the lawsuit two years after the defendant required the mold to be remediated, and the plaintiff, through the lawsuit, was not seeking to remedy the mold itself.  *Id*.  Unlike the plaintiff in *Todora*, Ms. Ingram reported the mold at the time it was discovered and with the goal of raising awareness of the problem so that it could be remedied.  [ECF No. 8] at ¶¶34-41.

Next, Ms. Ingram's official duties did not include testing for mold and reporting on its presence.  [ECF No. 8] at ¶39.  Defendants claim the opposite.  "[T]he scope and content of a plaintiff's job responsibilities is a question of fact, but the ultimate constitutional significance of those facts is a question of law."  *Flora*, 776 F.3d at 175.  The factual dispute between Ms. Ingram and Defendants regarding her job duties cannot be resolved on a motion to dismiss.  *Id*. at 175-76.

The fact that Ms. Ingram's superiors directed her to take the mold tests does not change the analysis.  What matters is whether the speech falls within an employee's "**routine job responsibilities**."  *Id*. at 178 (emphasis added).  When Ms. Ingram reported the mold tests to Rep.

Davanzo, he responded, "Who the fuck gave you permission to do this?"  [ECF No. 8] at ¶42. Additionally, in an email, Rep. Davanzo said that when he learned about the positive mold tests he asked Ms. Ingram, "[W]ho told you take these test [*sic*] and why?"  [ECF No. 8] at Exhibit B. Furthermore, Rep. Davanzo directed his office staff to call the landlord to investigate concerns of water and smells in the District Office.  [ECF No. 8] at Exhibit B.  Those statements indicate that it was the landlord's responsibility to investigate and address problems with the District Office, not Ms. Ingram's.

The mere fact that Ms. Ingram's speech related to the District Office does not make testing for mold and reporting on the results part of the work that Ms. Ingram was paid to do on an "ordinary basis."  *Williams v. City of Allentown*, 804 F. App'x 164, 168 (3d Cir. 2020) (citation omitted).  Rep. Davanzo's statements, paired with Ms. Ingram's averments regarding her job duties, "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 212 (citation omitted).  They also raise questions of fact regarding Ms. Ingram's job duties that cannot be decided on a motion to dismiss.

 In summary, Ms. Ingram's speech touched upon matters of public concern, which did not fall within her routine job responsibilities.  Additionally, it is premature to reach a contrary conclusion regarding these issues without a fully developed record.

**B. Eleventh Amendment immunity does not protect government officials sued in their *individual* capacities.**

Defendants, sued in their individual capacities, are not entitled to Eleventh Amendment immunity.  *See* Lewis v. Clarke, 581 U.S. 155, 163 (2017) ("[S]overeign immunity does not erect a barrier against suits to impose individual and personal liability.") (citation omitted); *Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir. 1981) ("The [E]leventh [A]mendment does not bar an action for damages against an official sued in his individual capacity.").  The Eleventh

Amendment analysis does not change when claims against state officials are raised under state law, including the Whistleblower Law. *See Lach v. Robb*, 679 F. Supp. 508, 515 (W.D. Pa. 1988) ("[T]he [E]leventh [A]mendment does not bar pendent state law claims seeking damages against a state official acting in his individual capacity."); *Ali v. McClinton*, No. 16-6373, 2017 WL 2588425, at *8-*9 (E.D. Pa. June 14, 2017) (holding that claims under the Whistleblower Law against state officials in their individual capacities were not barred by the Eleventh Amendment); *Ward v. Pennsylvania*, No. 14-00017, 2014 WL 4682067, at *18 (E.D. Pa. Sep. 22, 2014) (collecting cases).

In a footnote, Defendants argue, without any legal support, that the individual capacity distinction is not relevant to an Eleventh Amendment analysis when state law claims are at issue. As demonstrated above, that argument must fail. Ms. Ingram does not challenge Defendants' general argument that Pennsylvania has not agreed to waive its Eleventh Amendment immunity under the Whistleblower Law. However, that argument does not impact Ms. Ingram's suit against Defendants in their individual capacities. Additionally, *Arrington v. Commonwealth House of Representatives*, cited by Defendants, recognized the important distinction between individual and official capacity for purposes of Eleventh Amendment immunity. No. 10-CV-2248, 2010 WL 4681063, at *4 (M.D. Pa. Nov. 10, 2010).

In conclusion, the Eleventh Amendment does not bar pendant state law claims against state officials in their individual capacities.

### C. Parallel proceedings and exceptional circumstances do not exist to justify abstention under *Colorado River*.

First, Ms. Ingram's state court action is not parallel to this action due to the difference in parties. "A threshold issue that must be decided in any *Colorado River* abstention case is whether the two actions are parallel." *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997) (citation omitted).

"Generally, cases are parallel when they involve the same parties and claims."  *Id*.  "[W]hen the federal lawsuit plaintiff is a defendant in the state court proceeding, and the federal proceeding includes several defendants who are not party to the state court proceeding, the lawsuits are not parallel."  *NCAA v. Corbett*, 25 F. Supp. 3d 557, 571 (M.D. Pa. 2014) (citation omitted).  Given that Defendants are not parties to Ms. Ingram's state court action, these actions are not parallel.

Defendants' argument that they are equivalent to the Pennsylvania House Republican Caucus (the defendant in the state court action) fails to acknowledge that individual liability exists under the Whistleblower Law for state officers, as well as state entities.  *See* 43 P.S. § 1422. Because Defendants can be individually liable, they are not equivalent to the House Republican Caucus.  As a result, the two actions are not parallel.

Second, when the *Colorado River* factors are applied, the absence of exceptional circumstances is clear.  The "doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (citation omitted).  The following is the application of the six factors, as enumerated in *Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171 (3d Cir. 1999), to be applied in evaluating whether abstention is warranted:

1.  Which court first assumed jurisdiction over property.   The first factor only applies to in rem cases, so it has no bearing on this case.  *See Harris v. Vitran Express, Inc.*, No. 14-0704, 2014 U.S. Dist. LEXIS 158131, at *9 (W.D. Pa. Oct. 15, 2014), report and recommendation adopted, 2014 U.S. Dist. LEXIS 156785 (W.D. Pa., Nov. 6, 2014).

2. <u>The inconvenience of the federal forum</u>.  The courthouses in both the state and federal actions are in downtown Pittsburgh.  As a result, this is a non-factor for the analysis.  *See Id*.

3. <u>The desirability of avoiding piecemeal litigation</u>.  This is "by far" the most important factor.  *Moses*, 460 U.S. at 16.  In order for this factor to be met, "there must be a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review."  *Ryan,* 115 F.3d at 198 (emphasis in original).  "The presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts."  *Id*.  Defendants in this case "are unable to point to *any* congressional policy, let alone a *strongly articulated* one, evincing Congress' desire to avoid piecemeal litigation" of whistleblower claims.  *Harris*, 2014 U.S. Dist. LEXIS 158131, at *10 (emphasis in original).  As a result, this factor does not support abstention.

4. <u>The order in which jurisdiction was obtained</u>.  Ms. Ingram filed her state action prior to this action.  "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  *Moses*, 460 U.S. at 21.  Neither case has progressed past the pleadings stage, as Defendants filed a Preliminary Objection in the state court action.  As result, this factor does not support abstention.  *See Harris*, 2014 U.S. Dist. LEXIS 158131, at *11 (holding that

this was a non-issue when the state case had not substantially progressed as

compared to the federal case).

5. <u>Whether federal or state law controls</u>. "[A]bstention cannot be justified merely

because a case arises entirely under state law." *Ryan*, 115 F. 3d at 199.  In

this case, there are federal claims and state law claims.  The mere presence of

state law claims does not add support to an abstention argument.  *See Harris*,

2014 U.S. Dist. LEXIS 158131, at \*12 (finding this factor to be a draw due to

the presence of state and federal claims).

6. <u>Whether the state court will adequately protect the interests of the parties</u>.

"[T]his factor is normally relevant only when the state forum is *in*adequate."

*Ryan*, 115 F. 3d at 200 (emphasis in original).  "When the state court is

adequate, however, the factor carries little weight."  *Id*.  Ms. Ingram is not

arguing that the Commonwealth Court is inadequate, and Defendants' do not

appear to be as well, as a result this factor is a draw.  *See Harris*, 2014 U.S.

Dist. LEXIS 158131, at \*12. (finding this factor to be a draw due to the

adequate state forum).

When the six factors are properly applied to this case, there is no question that abstention

is unwarranted under *Colorado River*.

**D.  Ms. Ingram states a claim under the Whistleblower Law.**

It is premature to determine whether Ms. Ingram's reports concerned "violations," and

thus wrongdoing, due to the lack of discovery.  Establishing a violation for purposes of the

Whistleblower Law "requires evidence."  *Dunn v. Pennsylvania Dep't of Hum. Servs.*, 253 A.3d

842, at \*5 (Pa. Commw. Ct. 2021).  The "discovery stage is the appropriate time to investigate

whether proof supports the allegations contained in the Petition." *Id*. at *7.  The legal issues

alleged by Defendants should "be decided in the course of litigation." *Rodgers*, 659 A.2d at 66.

      To state a claim for a Whistleblower Law violation, Ms. Ingram must only "allege facts

suggestive of the proscribed conduct and enough facts to raise a reasonable expectation that

discovery will reveal evidence of the necessary elements of [her] claim." *Bielewicz v. Penn-*

*Trafford Sch. Dist.*, No. 10-1176, 2011 U.S. Dist. LEXIS 40124, at *17 (W.D. Pa. Feb. 9, 2011)

(citation omitted), report and recommendation adopted, 2011 U.S. Dist. LEXIS 40129 (W.D. Pa.

Apr. 13, 2011).  Ms. Ingram "is not required to cite a specific statute, code or regulation in order

to state a claim under the Whistleblower Law." *Beaumont v. Allegheny Cty. Emergency Servs.*,

No. 20-234, 2021 U.S. Dist. LEXIS 46134, at *22 (W.D. Pa. Mar. 9, 2021), report and

recommendation adopted, 2021 U.S. Dist. LEXIS 92160 (W.D. Pa. May 14, 2021).  Ms. Ingram

exceeded that requirement in providing legal citations, which further support the denial of

Defendants' Motion.  *See Daman v. Rochester Area Sch. Dist*., No. 2:19-cv-01131-RJC, 2020

WL 2735984, at *13 (W.D. Pa. May 26, 2020) ("Such is the case at bar, and here, the defendants

have the added element of citation to specific rules and regulations which were violated…").

      In support of its Motion, Defendants argue that Ms. Ingram must plead the level of mold

present in the District Office in order to state a claim.  Defendants' pleading requirement reflects

a summary judgment standard—not a motion to dismiss.  Defendants also argue that Ms. Ingram

failed to plead that the presence of mold created an unsanitary or hazardous condition.  That

claim disregards the text of the First Amendment Complaint.

      In the First Amended Complaint, Ms. Ingram provides detailed factual allegations

concerning the following:

- Good faith reports. [ECF No. 8] at ¶¶ 17, 20, 26, 28, 30, 41;
- The reports concerned wrongdoing. [ECF No. 8] at ¶¶ 16, 35-39, 68-71;

- The reports resulted in retaliation. [ECF No. 8] at ¶¶ 46-67.

Because Ms. Ingram pled factual allegations that track the elements of the Whistleblower Law, including ultimate facts of reporting wrongdoing and subsequent retaliation, dismissal is not proper. *See Rodgers*, 659 A.2d at 66; *Podgurski v. Pennsylvania State Univ.*, 722 A.2d 730, 732-33 (Pa. Super. Ct. 1998). [1]

The cases cited by Defendants in support of their lack of wrongdoing argument were all decided on summary judgment. *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 552 (Pa. Commw. Ct. 2016); *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1064 (Pa. Commw. Ct. 2013). Therefore, they do not support Defendants' Motion. The legal provisions at issue in those cases are also easily distinguishable from those cited by Ms. Ingram.

In *Sukenik*, the court held that the legal provisions cited by the plaintiff did not speak to the wrongdoing alleged by the plaintiff. 131 A.3d at 557, 559. Those provisions concerned the chain of command for the police department and the attendance of the township manager and did not impose affirmative duties to act or not act in a manner relevant to the plaintiff's argument. *Id.* Unlike *Sukenik*, the General Safety Law and Ordinance No. 2019-2 of the Borough of West Newton (Attached as Exhibit A) do impose affirmative duties, or standards, that are relevant to this matter. The failure to adhere to those standards constitutes prohibited conduct.

Under the General Safety Law, "[a]ll establishments shall be so constructed, equipped, arranged, operated, and conducted as to provide reasonable and adequate protection for the life, limb, health, safety, and morals of all persons employed therein." 43 P.S. § 25-2(a). The District Office meets the definition of an "establishment." 43 P.S. § 25-1. Importantly, § 25-15 of the General Safety Law delineates the penalties for violations of "any provisions" of the law,

---

[1] "A Pennsylvania demurrer is nearly identical to the federal 12(b)(6) motion to dismiss for failure to state a claim." *Arena v. McShane*, 150 F. App'x 165, 167 (3d Cir. 2005).

including 43 P.S. § 25-2(a), demonstrating that violations constitute prohibited conduct.  The

wrongdoing alleged by Ms. Ingram, specifically the presence of toxic mold, falls squarely within

the conduct prohibited by the General Safety Law—that which fails to protect of life, health, and

safety.  As alleged in the First Amended Complaint, the mold caused Ms. Ingram headaches and

burning eyes.  [ECF No. 8] at ¶¶ 16, 35-38.

      Section 1 of Ordinance No. 2019-2 specifies that West Newton adopted the 2015

International Property Maintenance Code to provide "the standards for supplied utilities and

facilities and other physical things and conditions essential to ensure that structures are safe,

sanitary and fit for occupation and use."  Similar to the General Safety Law, Section 2 of

Ordinance No. 2019-2 enumerates "Violation Penalties" for violations of the IMPC.  Given the

creation of penalties, it is clear that West Newton defined prohibited conduct in the Borough.

The conduct that West Newton prohibits includes unclean, unsafe, unsanitary, and unhealthy

conditions.  As alleged by Ms. Ingram, the presence of toxic mold created those conditions,

violating eight standards from the IPMC.  [ECF No. 8] at ¶ 69.

      *Evans* is distinguishable because the improper conduct alleged by the plaintiff was not

covered by the federal statutes cited by the plaintiff.  81 A.3d at 1072.  The plaintiff also

attempted to rely on an unwritten policy, which is not relevant to this matter.  *Id*. at 1073.  As

detailed above, the wrongdoing alleged by Ms. Ingram is prohibited conduct under the cited legal

provisions; therefore, *Evans* does not control.

      In summary, there is no merit to Defendants' argument that Ms. Ingram failed to plead

wrongdoing.  The First Amended Complaint contains detailed factual allegations and legal

citations that far exceed the pleading requirements.

      Defendants' last two arguments raise questions of fact that cannot be resolved on a

Motion to Dismiss.  *See Flora*, 776 F.3d at 175.  Defendants' claim that Ms. Ingram failed to plead that she made a report about being "forced" to perform mold tests.  Defendants incorrectly cite the Ethical and Professional Conduct Rule that Ms. Ingram referenced.  That Rule prohibits an employee from being "required" to perform tasks unrelated to their official duties.  [ECF No. 8] at ¶ 71.  Ms. Ingram pled that Lisa Zaucha directed her to take the mold tests, which were not part of her official duties, and that she then reported Ms. Zaucha's directive to Rep. Davanzo.  [ECF No. 8] at ¶¶ 34, 39, 44.  Rep. Davanzo also recognized Ms. Ingram's report of wrongdoing when he wrote the following:

> Fast forward to yesterday, I walk into the office and my staff hands me two Generic mold test [*sic*].  They said hey we have mold ! [*sic*] I said who told you to take these test [*sic*] and why?  They replied that they contacted Lisa Zaucha who then contacted Jim Mann and asked him what to do.  Jim Mann instructed them to go and get a mold test.

[ECF No. 8] at Exhibit B.  Those facts constitute a report of wrongdoing, which Defendants may dispute, but that dispute cannot be resolved on a motion to dismiss.

Regarding the "good faith" requirement, Defendants incorrectly argue that Ms. Ingram had to know the laws violated, and reference them, when she made her complaint.  "[A]s a lay person, [Ms. Ingram] need not have referenced the applicable statute, regulation, ordinance, or code of conduct/ethics in [her] report."  *Allen v. City of Phila.*, 208 A.3d 209, at *14-15 (Pa. Commw. Ct. 2019).  Also, in questioning Ms. Ingram's motives, Defendants raise issues of fact.  Ms. Ingram pled that she complained about the mold "in order to protect herself, her colleagues, and Rep. Davanzo's constituents."  [ECF No. 8] at ¶ 41.  That is the definition of good faith.  Defendants may dispute Ms. Ingram's motives, but that dispute must be resolved at a later stage of the case.

### III. Conclusion

For the foregoing reasons, Ms. Ingram has pled claims of First Amendment and whistleblower retaliation.   Therefore, Defendants' Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

/s/ *Nicholas W. Kennedy*
Nicholas W. Kennedy
PA ID No. 317386
Quatrini Law Group
550 East Pittsburgh Street
Greensburg, PA 15601
Phone: 724-837-0080
Fax: 724-837-1348

15