IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCEL NICOLE INGRAM, | ) | |
| | ) | |
| Plaintiff, | ) | 2:22-cv-1594 |
| | ) | |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| THE HONORABLE GEORGE DUNBAR, *IN HIS INDIVIDUAL CAPACITY*, THE HONORABLE ERIC DAVANZO, *IN HIS INDIVIDUAL CAPACITY*, JACOB SMELTZ, *IN HIS INDIVIDUAL CAPACITY*, JORDAN GOUKER, *IN HIS INDIVIDUAL CAPACITY*, WILLIAM SCHALLER, *IN HIS INDIVIDUAL CAPACITY*, LISA ZAUCHA, *IN HER INDIVIDUAL CAPACITY*, ALICIA MCGHEE, *IN HER INDIVIDUAL CAPACITY*, JILL VECCHIO, ESQ., *IN HER INDIVIDUAL CAPACITY*, CANDICE MITCHELL, *IN HER INDIVIDUAL CAPACITY*, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff, Marcel Ingram, brings a two-count Amended Complaint against Defendants, The Honorable George Dunbar, The Honorable Eric Davanzo, Jacob Smeltz, Jordan Gouker, William Schaller, Lisa Zaucha, Alicia McGhee, Jill Vecchio, and Candice Mitchell, each in their individual capacities, alleging claims for violations of 42 U.S.C. § 1983 and the Pennsylvania Whistleblower Law.  (ECF No. 8).  Presently before the Court, is Defendants' Motion to Dismiss Ms. Ingram's Amended Complaint.  (ECF No. 10).  The Motion to Dismiss has been fully briefed and is now ripe for decision.  For the reasons that follow, Defendants' Motion to Dismiss will be granted.

1

I.     **Statement of Facts**

In March 2020, the House Republican Caucus (HRC) assigned Ms. Ingram to serve as Representative Davanzo's District Office Manager in West Newton, Pennsylvania. (ECF No. 8, ¶¶ 11, 13). In the beginning of May 2022, Ms. Ingram and Fallyn Weightman, a Legislative Aide, began sporadically smelling strong, foul orders while working in the District Office. (ECF No. 8, ¶ 15). The odors became so intense that they burned Ms. Ingram's and Ms. Weightman's eyes, and both began developing headaches from the smell. (ECF No. 8, ¶ 16).

In a May 5, 2022 text message exchange between Representative Davanzo, Ms. Ingram, and Ms. Weightman, Ms. Ingram reported that the odors were causing their eyes to burn. (ECF No. 8, ¶ 17). In response, Representative Davanzo speculated that the smell was coming from the District Office's neighbor. (ECF No. 8, ¶ 18). Ms. Ingram raised the odor issue, including the headaches that she and Ms. Weightman were experiencing, with Representative Davanzo several more times, and he repeatedly referred her to the District Office's landlord. (ECF No. 8, ¶ 20).

Following his advice, Ms. Ingram made multiple complaints, regarding the smell, to Joyce Pawlik, the District Office's landlord. (ECF No. 8, ¶ 21). Despite her complaints, the smell continued to reappear, and Ms. Pawlik continued to claim that she was unable to locate its source. (ECF No. 8, ¶ 22).

Although, on June 6, 2022, Ms. Ingram notified Lisa Zaucha, Southwest Regional Coordinator of District Operations for the HRC, about the office odors and flooding, Ms. Ingram received no response. (ECF No. 8, ¶¶ 26-27). On July 7, 2022, Ms. Zaucha emailed Ms. Ingram to follow up on the "mold situation." (ECF No. 8, ¶ 29). Ms. Ingram responded by describing the odor's continued presence, following which Ms. Zaucha forwarded Ms. Ingram's email to

James Mann, HRC's Senior Deputy Chief Counsel. (ECF No. 8, ¶¶ 30-31). Mr. Mann advised Ms. Zaucha to purchase mold test kits. (ECF No. 8, ¶ 32). Ms. Zaucha told Ms. Ingram to procure mold test kits, for which that she would be reimbursed. (ECF No. 8, ¶ 33). Ms. Ingram purchased the test kits and brought them to the District Office on July 12, 2022. (ECF No. 8, ¶ 34).

While in the District Office, Ms. Ingram noticed what appeared to be mold growing inside the air vents. (ECF No. 8, ¶ 35). After removing the vent covers, Ms. Ingram saw a significant amount of a mold-like substance, which she took pictures of. (ECF No. 8, ¶ 36). The mold test kits came back positive for Aspergillus/Penicillium and Stachybotrys, which are both linked to negative health impacts. (ECF No. 8, ¶¶ 37-38). When Ms. Ingram informed Representative Davanzo of the mold test results on July 12, 2022, he asked, "Who the fuck gave you permission to do that." (ECF No. 8, ¶ 42). Ms. Ingram explained that Ms. Zaucha and Mr. Mann had told her to purchase the mold test kits. (ECF No. 8, ¶ 44). Representative Davanzo claimed that he was not aware of the problem and accused Ms. Ingram of "opening a can of worms." (ECF No. 8, ¶ 45).

On July 13, 2022, Representative Davanzo sent a profanity-laced email to Mr. Smeltz, Mr. Gouker, Mr. Schaller, and Representative Dunbar, in which he chastised Ms. Ingram for taking the mold tests. (ECF No. 8, ¶ 46). Rep. Davanzo stated in the email that he did not know of any staff complaints regarding the mold and expressed his frustration for having to remedy the mold situation. (ECF No. 8, ¶¶ 47-49). Mr. Smeltz sent an email response to Representative Davanzo separately stating, "I understand this is being addressed. I am very sorry for the problem. I only just became aware. Totally unacceptable." (ECF Nos. 8, ¶ 47; 8-2, at 4).

After Ms. Ingram reported the positive mold tests, Representative Davanzo largely stopped talking to Ms. Ingram, removed her from staffing certain events, and ignored her emails. (ECF No. 8, ¶¶ 55-56). On July 19, 2022, Ms. Ingram received a text message from Ms. Zaucha, requesting a meeting to discuss the mold situation at Representative Davanzo's request. (ECF No. 8, ¶¶ 57-58). Upon her arrival at the District Office, Ms. Ingram met with Ms. Zuacha and Ms. McGhee. (ECF No. 8, ¶ 59). Mr. Gouker, Ms. Mitchell, and Ms. Vecchio joined the meeting by phone. (ECF No. 8, ¶ 60). Mr. Gouker informed Ms. Ingram that the HRC had terminated her employment and that Representative Davanzo made the decision due to a "clash of personalities." (ECF No. 8, ¶¶ 61, 63). In a subsequent termination letter, Mr. Gouker stated that Ms. Ingram was terminated for "issues previously discussed with you by Lisa Zaucha and Representative Davanzo." (ECF No. 8, ¶ 64). In response to Ms. Ingram's unemployment compensation filing, the HRC reported to the Office of Unemployment Compensation that it fired Ms. Ingram for rule violations of its conduct/discipline and annual leave policies. (ECF No. 8, ¶ 66). The Amended Complaint alleges that as a result of her termination, she has suffered economic and noneconomic damages. (ECF No. 8, ¶ 73).

## II.    Relevant Legal Standards

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard.  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).  Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint.  *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).  The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding."  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the

5

plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).

### III. Discussion

#### A. First Amendment Freedom of Speech

Defendants argue that Ms. Ingram's speech was not protected by the First Amendment as she was acting as a public employee while performing her official duties. (ECF No. 12, at 5). Ms. Ingram argues that her speech was constitutionally protected as it touched on a matter of public concern. (ECF No. 13, at 3).

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). "Public employees do not surrender all of their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 416 (2006). "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation omitted). To establish a First Amendment retaliation claim, a plaintiff must establish that "(1) he engaged in constitutionally protected conduct; (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3)

a causal link existed between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019).

As to the first step of Ms. Ingram's First Amendment retaliation claim, a three-prong inquiry determines whether the First Amendment protects a public employee's speech: "(1) whether the employee spoke as a citizen; (2) whether the statement involved a matter of public concern; and (3) whether the government employer nevertheless had an adequate justification for treating the employee differently from any other member of the general public based on its needs as an employer." *Id.* at 753 (internal quotations omitted). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 416.

In this case, Ms. Ingram argues that her speech regarding the mold at the District Office was speech made as a public citizen. The undisputed record evidence, however, shows that Ms. Ingram's speech was made within her capacity as a public employee, employed by the HRC, rather than as a citizen speaking on matters of general public concern. At the time Ms. Ingram made her alleged protected speech, Ms. Ingram served as Representative Davanzo's District Office Manager. Ms. Ingram informed Representative Davanzo multiple times about the foul-smelling odor in the District Office. After reporting the odors up the HRC chain-of-command, Mr. Mann and Ms. Zaucha directed Ms. Ingram to purchase mold test kits and test the office for mold. Mr. Mann and Ms. Zaucha told Ms. Ingram that the HRC would reimburse her for the cost of the mold test kits. While at work on July 12, 2022, Ms. Ingram conducted the mold tests at the District Office, which eventually came back positive.

All such activities occurred within the context of Ms. Ingram's job as Representative Davanzo's District Office Manager. Ms. Ingram was ordered to conduct the mold tests with the permission of her superiors at the HRC. Ms. Ingram's decision impacted the employees at Representative Davanzo's District Office. Ms. Ingram's speech directly related to matters within the scope of her position as a HRC employee. As such, Ms. Ingram's speech was made as a HRC employee concerning working conditions at Representative Davanzo's District Office, not as a public citizen. As such, the Court finds that Ms. Ingram's speech was made as a public employee concerning District Office matters, rather than speech made as a private citizen. Defendants' Motion to Dismiss will be granted as to Ms. Ingram's First Amendment retaliation claims. In this case, there is no set of facts that Ms. Ingram can plead to suggest that she spoke as a private citizen; thus, granting leave to amend would be futile. As such, Ms. Ingram will not be granted leave to amend her § 1983 claims against Defendants. As such, Defendants' Motion to Dismiss Ms. Ingram's Count I, § 1983 claims, will be granted.

### B. Pennsylvania Whistleblower Law

Ms. Ingram's remaining Count II state-law cause of action, brought pursuant to the Pennsylvania Whistleblower Law, does not present a federal question. When federal question jurisdiction ceases to exist, a district court may, in its discretion, decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C § 1367(c)(3); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citation omitted). More specifically, a court "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). No such affirmative

8

justification compels supplemental jurisdiction here. Accordingly, Ms. Ingram's remaining claims will be dismissed without prejudice to re-file in state court.

## IV.     Conclusion

For the reasons stated above, Defendants' Motion to Dismiss will be granted. Ms. Ingram's Count I, § 1983 claims, will be dismissed. Ms. Ingram will not be granted leave to amend with regard to her § 1983 claims against Defendants. The Court will decline to exercise jurisdiction over the remaining Count II, Pennsylvania Whistleblower Law claims. Therefore, Ms. Ingram's Count II, Pennsylvania Whistleblower Law claims, will be dismissed without prejudice to Ms. Ingram's right to refile her claims in the appropriate court. As such, Defendants will be dismissed from the case. An appropriate Order will be entered.

DATE: 4/13/2023

Marilyn J. Horan
United States District Judge