**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| MARCEL NICOLE INGRAM,<br><br>Plaintiff,<br><br>vs.<br><br>THE HONORABLE GEORGE DUNBAR, IN HIS INDIVIDUAL CAPACITY; THE HONORABLE ERIC DAVANZO, IN HIS INDIVIDUAL CAPACITY; JACOB SMELTZ, IN HIS INDIVIDUAL CAPACITY; JORDAN GOUKER, IN HIS INDIVIDUAL CAPACITY; WILLIAM SCHALLER, IN HIS INDIVIDUAL CAPACITY; LISA ZAUCHA, IN HER INDIVIDUAL CAPACITY; ALICIA MCGHEE, IN HER INDIVIDUAL CAPACITY; JILL VECCHIO, ESQ., IN HER INDIVIDUAL CAPACITY; AND CANDICE MITCHELL, IN HER INDIVIDUAL CAPACITY;<br><br>Defendants, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:22-CV-01594-MJH |

**MEMORANDUM OPINION**

Plaintiff, Marcel Ingram, brings a two-count Amended Complaint against Defendants, The Honorable George Dunbar, The Honorable Eric Davanzo, Jacob Smeltz, Jordan Gouker, William Schaller, Lisa Zaucha, Alicia McGhee, Jill Vecchio, and Candice Mitchell, each in their individual capacities, alleging claims for violations of 42 U.S.C. § 1983 and the Pennsylvania Whistleblower Law. (ECF No. 8). On February 21, 2023, Defendants filed a Motion to Dismiss Ms. Ingram's Amended Complaint. (ECF No. 10). In its April 13, 2023 Memorandum Opinion and Order, (ECF Nos. 17 & 18), this Court granted Defendants' Motion to Dismiss Plaintiff's

First Amendment Claim, Count I. On May 2, 2024, the Third Circuit filed a mandate, reversing and remanding this Court's April 13, 2023 Order. (ECF No. 22). Presently, before the Court, is the Defendants' Motion to Dismiss Plaintiff's Pennsylvania Whistleblower claim, at Count II within the First Amended Complaint. The issues have been fully briefed and are ripe for decision. For the following reasons, Defendants' Motion to Dismiss will be denied.

## I. Statement of Facts

In March 2020, the House Republican Caucus (HRC) assigned Ms. Ingram to serve as Representative Davanzo's District Office Manager in West Newton, Pennsylvania. (ECF No. 8, ⁋⁋ 11, 13). In the beginning of May 2022, Ms. Ingram and Fallyn Weightman, a Legislative Aide, began sporadically smelling strong, foul orders while working in the District Office. (ECF No. 8, ⁋ 15). The odors became so intense that they burned Ms. Ingram's and Ms. Weightman's eyes, and both began developing headaches from the smell. (ECF No. 8, ⁋ 16).

In a May 5, 2022 text message exchange between Representative Davanzo, Ms. Ingram, and Ms. Weightman, Ms. Ingram reported that the odors were causing her and Ms. Weightman's eyes to burn. (ECF No. 8, ⁋ 17). In response, Representative Davanzo speculated that the smell was coming from the District Office's neighbor. (ECF No. 8, ⁋ 18). Ms. Ingram raised the odor issue, including the headaches that she and Ms. Weightman were experiencing, with Representative Davanzo several more times, and he repeatedly referred her to the District Office's landlord. (ECF No. 8, ⁋ 20).

Following his advice, Ms. Ingram made multiple complaints, regarding the smell, to Joyce Pawlik, the District Office's landlord. (ECF No. 8, ⁋ 21). Despite her complaints, the smell continued to reappear, and Ms. Pawlik continued to claim that she was unable to locate the source for the odor. (ECF No. 8, ⁋ 22).

On June 6, 2022, Ms. Ingram notified Lisa Zaucha, Southwest Regional Coordinator of District Operations for the HRC, about the office odors and flooding. (ECF No. 8, ¶¶ 26-27). On July 7, 2022, Ms. Zaucha emailed Ms. Ingram to follow up on the "mold situation." (ECF No. 8, ¶ 29). Ms. Ingram responded, describing the odor's continued presence, following which Ms. Zaucha forwarded Ms. Ingram's email to James Mann, HRC's Senior Deputy Chief Counsel. (ECF No. 8, ¶¶ 30-31). Mr. Mann advised Ms. Zaucha to purchase mold test kits. (ECF No. 8, ¶ 32). Ms. Zaucha told Ms. Ingram to procure mold test kits, for which she would be reimbursed. (ECF No. 8, ¶ 33). Ms. Ingram purchased the test kits and brought them to the District Office on July 12, 2022. (ECF No. 8, ¶ 34).

While in the District Office, Ms. Ingram noticed what appeared to be mold growing inside the air vents. (ECF No. 8, ¶ 35). After removing the vent covers, Ms. Ingram saw a significant amount of a mold-like substance, which she photographed. (ECF No. 8, ¶ 36). The mold test kits came back positive for Aspergillus/Penicillium and Stachybotrys, which are both linked to negative health impacts. (ECF No. 8, ¶¶ 37-38). When Ms. Ingram informed Representative Davanzo of the mold test results on July 12, 2022, he asked, "Who the fuck gave you permission to do that." (ECF No. 8, ¶ 42). Ms. Ingram explained that Ms. Zaucha and Mr. Mann had told her to purchase the mold test kits. (ECF No. 8, ¶ 44). Representative Davanzo claimed that he was not aware of the problem and accused Ms. Ingram of "opening a can of worms." (ECF No. 8, ¶ 45).

On July 13, 2022, Representative Davanzo sent a profanity-laced email to Mr. Smeltz, Mr. Gouker, Mr. Schaller, and Representative Dunbar, in which he chastised Ms. Ingram for performing the mold tests. (ECF No. 8, ¶ 46). Rep. Davanzo stated in the email that he did not know of any staff complaints regarding the mold, and he expressed his frustration for having to

remedy the mold situation. (ECF No. 8, ⁋⁋ 47-49). Mr. Smeltz sent a separate email response to only Representative Davanzo, stating, "I understand this is being addressed. I am very sorry for the problem. I only just became aware. Totally unacceptable." (ECF Nos. 8, ⁋ 47; 8-2, at 4).

After Ms. Ingram reported the positive mold tests, Representative Davanzo largely stopped talking to her, he removed her from staffing certain events, and ignored her emails. (ECF No. 8, ⁋⁋ 55-56). On July 19, 2022, Ms. Ingram received a text message from Ms. Zaucha, requesting a meeting to discuss the mold situation at Representative Davanzo's request. (ECF No. 8, ⁋⁋ 57-58). Upon her arrival at the District Office, Ms. Ingram met with Ms. Zuacha and Ms. McGhee. (ECF No. 8, ⁋ 59). Mr. Gouker, Ms. Mitchell, and Ms. Vecchio joined the meeting by phone. (ECF No. 8, ⁋ 60). Mr. Gouker informed Ms. Ingram that the HRC had terminated her employment and that Representative Davanzo made the decision due to a "clash of personalities." (ECF No. 8, ⁋⁋ 61, 63). In a subsequent termination letter, Mr. Gouker stated that Ms. Ingram was terminated for "issues previously discussed with you by Lisa Zaucha and Representative Davanzo." (ECF No. 8, ⁋ 64). In response to Ms. Ingram's unemployment compensation filing, the HRC reported to the Office of Unemployment Compensation that it fired Ms. Ingram for rule violations of its conduct/discipline and annual leave policies. (ECF No. 8, ⁋ 66). The Amended Complaint alleges that as a result of her termination, she has suffered economic and noneconomic damages. (ECF No. 8, ⁋ 73).

## II. Relevant Legal Standards

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014)

(quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a

motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

## III. Discussion

### A. First Amendment Claim

Defendants argue that Ms. Ingram's speech was not protected by the First Amendment as she was acting as a public employee while performing her official duties. (ECF No. 12, at 5). Ms. Ingram argues that her speech was constitutionally protected as it touched on a matter of public concern. (ECF No. 13, at 3).

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). "Public employees do not surrender all of their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 416 (2006). "[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation omitted). To establish a First Amendment retaliation claim, a plaintiff must establish that "(1) he engaged in constitutionally protected conduct; (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link existed between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). As to the first step of Ms. Ingram's First Amendment retaliation claim, a three-prong inquiry determines whether the First Amendment protects a public employee's speech: "(1) whether the employee spoke as a citizen; (2) whether the statement involved a matter of public concern; and (3) whether the government employer nevertheless had an adequate justification for treating the employee differently from

any other member of the general public based on its needs as an employer." *Id.* at 753 (internal quotations omitted). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 416.

The Third Circuit held in its May 2, 2024 Mandate that Ms. Ingram's alleged actions, i.e., reporting the mold within the office were made in her capacity of a citizen, because they were not within the bounds of her job duties as Office Manager. (ECF No. 22, at 8). The Third Circuit did not discuss the second and third elements of the three-pronged test. However, the arguments contained in the parties' briefs only relate to the first element of the test. As the other two elements are not discussed in depth by, the Court will not address them. At this stage, Ms. Ingram has plead facts sufficient to establish a First Amendment claim against Defendants. Defendants' Motion to Dismiss Plaintiff's First Amendment claims, will be denied.

**B. Pennsylvania Whistleblower Law**

*i. 11th Amendment Immunity*

Defendants argue that Ms. Ingram's Pennsylvania Whistleblower Law claim should be dismissed, because Defendants are afforded immunity under the 11th Amendment. (ECF No. 12, at 8). Ms. Ingram argues that Defendants are not immune, because 11th Amendment immunity does not protect government officials sued in their individual capacities. (ECF No. 13, at 6).

Eleventh Amendment immunity does not apply to those who are sued in their individual capacities. *See Lewis v. Clarke*, 581 U.S. 155, 163 (2017) ("[S]overeign immunity does not erect a barrier against suits to impose individual and personal liability.") (citation omitted); *Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir. 1981) ("The [E]leventh [A]mendment does not bar an

action for damages against an official sued in his individual capacity."). The Eleventh Amendment analysis does not change when claims against state officials are raised under state law, including the Whistleblower Law. *See Lach v. Robb*, 679 F. Supp. 508, 515 (W.D. Pa. 1988) ("[T]he [E]leventh [A]mendment does not bar pendent state law claims seeking damages against a state official acting in his individual capacity."); *Ali v. McClinton*, 2017 WL 2588425, at *8-*9 (E.D. Pa. 2017) (holding that claims under the Whistleblower Law against state officials in their individual capacities were not barred by the Eleventh Amendment); *Ward v. Pennsylvania*, WL 4682067, at *18 (E.D. Pa. 2014) (collecting cases).

In this case, Ms. Ingram is bringing her Pennsylvania Whistleblower claim against Defendants in their individual capacities. As such, Defendants are not afforded 11th Amendment immunity from Ms. Ingram's Pennsylvania Whistleblower claims.

*ii. Colorado River Doctrine*

Defendants argue that the Court should abstain from exercising jurisdiction over this claim pursuant to the abstention doctrine laid out in *Colorado River Water Conservation District v. United States*, 414 U.S. 800 (1986). (ECF No. 12, at 9). Ms. Ingram argues that abstention is not proper under *Colorado River*. (ECF No. 13, at 7-10).

The *Colorado River* doctrine permits courts to abstain from exercising their jurisdiction over a matter by staying or dismissing a pending federal action in favor of a parallel state court proceeding. *Nationwide Mutual Fire Ins., Co. v. George v. Hamilton, Inc.*, 571 F. 3d 299, 307 (3d Cir. 2009). "Cases are parallel when they involve the same parties and claims." *Kelly v. Maxum Specialty Ins. Grp.* 868 F.3d 274, 284-85 (3d Cir. 2017) (citing *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997)). Parallel proceedings are those that are considered "truly

duplicative," or at least "effectively the same." *Id.* (citing *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223-24 (3d Cir. 1994)). The cases do not need to be precisely identical, but "there must be a likelihood that the state litigation will dispose of all the claims presented in the federal case." *NCAA v. Corbett*, 25 F. Supp. 3d 557, 571 (M.D. Pa. 2014) (citing *Flint v. A.P. Desanno & Sons*, 234 F.Supp.2d 506, 510–11 (E.D. Pa. 2002)). However, "[w]hen the claims, parties, or requested relief differ, deference may not be appropriate." *Id.* (citing *Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 40 (3d Cir. 1980)).

If a court decides that parallel proceedings are present, then they must consider whether "extraordinary circumstances" exist to warrant abstention. *Spring City Corp v. American Bldgs. Co.*, 193 F. 3d 165, 171 (3d Cir. 1999). The extraordinary circumstances are as follows:

> (1) Which court first assumed jurisdiction over property involved, if any; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court proceedings would adequately protect the rights of the parties.

*Id.* "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19.

In this case, Defendants recognize that the named individual Defendants are different from those in Ms. Ingram's state action; however, Defendants argue that Ms. Ingram is effectively suing the Pennsylvania House Republican Caucus, because the facts and theories related to the Pennsylvania Whistleblower claims in this case are the same as in Ms. Ingram's state action. (ECF No. 12, at 9). Ultimately, the parties in this case are different from those in Ms. Ingram's state court action. Ms. Ingram's state court action is brought against the

Pennsylvania House Republican Caucus. *See Ingram v. Pennsylvania House Republican Caucus* 316 A.3d 659 (Pa. Commw. Ct. 2024). In the present matter, Ms. Ingram is suing various representatives and other individuals, in their individual capacities, none of whom are parties in the state action. Further, the Pennsylvania Whistleblower law allows for individual liability, in addition to state entities. *See* 43 P.S. § 1422. Thus, the Pennsylvania Whistleblower Law claims in this case are not parallel to those brought in Ms. Ingram's state action, and the Court will not abstain from exercising its jurisdiction over the Pennsylvania Whistleblower claim. Because the Court has found that the claims are not parallel, it need not address the factors related to extraordinary circumstances.

*iii. Merits of the Pennsylvania Whistleblower Law Claim*

Defendants argue that Ms. Ingram fails to allege sufficient facts to establish a Pennsylvania Whistleblower Law claim, because Ms. Ingram's report to Rep. Davanzo was not a good faith report of wrongdoing. (ECF No. 12, at 11). Defendants argue that Ms. Ingram cannot establish that the presence of mold at the office violated a statute or ordinance; and thus, constitutes wrongdoing under the Pennsylvania Whistleblower Law. (*Id.* at 11-12). Ms. Ingram argues that she has pled sufficient facts to establish a Pennsylvania Whistleblower Law claim against Defendants. (ECF No. 13, at 10-14).

The Pennsylvania Whistleblower Law prohibits discrimination or retaliation against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body. 43 P.S. § 1423. A "good faith report" is defined as "a report of ... wrongdoing or waste which is made without malice or consideration of

personal benefit and which the person making the report has reasonable cause to believe is true." 43 P.S. § 1422. Wrongdoing is defined as a "violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." *Id.* The law allegedly violated "must specifically define some prohibited conduct or it cannot be violated in a way that constitutes a 'wrongdoing.'" *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 556 (Pa. Cmmw. Ct. 2016).

As Ms. Ingram alleges, Defendants have an obligation under the General Safety Law ("GSL") and Ordinance 2019-2 of the Borough of West Newton to maintain their employment offices in a condition that reasonably protects its employees' health and safety. *See* 43 P.S. § 25-2(a); Borough of West Newton, Ordinance 2019-2. Specifically, the GSL requires that "all establishments shall be so constructed, equipped, arranged, operated, and conducted as to provide reasonable and adequate protection for the life, limb, health, safety, and morals of all persons employed therein." 43 P.S. § 25-2(a). Ordinance 2019-2 of the Borough of West Newton provides the "standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use." The GSL and Ordinance 2019-2 set broad standards for establishments to be maintained in a manner that is reasonably safe and healthy.

Here, Ms. Ingram has pled that she suffered from headaches and that her eyes burned because of the odor of the mold. (ECF No. 8, at 16). Ms. Ingram has further alleged that the types of molds that were present in the office are linked to negative health impacts. (*Id.* at 38). After discovering that there was mold in the office, Ms. Ingram raised the issue with Rep. Davanzo "to protect herself, her colleagues, and Rep. Davanzo's constituents." (*Id.* at 41). While

it is unclear what specific provisions of the statute and ordinance apply to the alleged conduct at issue, it is possible, with further development, that the presence of mold at the office may constitute a violation of Defendants' general obligations enumerated in the GSL and Ordinance 2019-2. As such, Ms. Ingram has alleged sufficient facts, at this stage, to plead wrongdoing under the Pennsylvania Whistleblower Law.

Defendants also argue that Ms. Ingram's report to Rep. Davanzo was not made in "good faith," because Ms. Ingram did not believe that the presence of mold violated any law or regulation when she made the report and that she only made the report so that she could work from home. (*Id.* at 13-14). A report is made in good faith when it is made "without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 P.S. § 1422. Taking the facts pled as true, there are no alleged facts to suggest that Ms. Ingram's report was not made in good faith. Ms. Ingram pled that she reported the presence of the mold in the office to Rep. Davanzo out of concern for herself, her coworkers, and Rep. Davanzo's constituents. Thus, Ms. Ingram has alleged facts sufficient to plead that her report to Rep. Davanzo was made in good faith. Defendants' Motion to Dismiss Ms. Ingram's Pennsylvania Whistleblower Law claims against them, will be denied.

## IV. Conclusion and Order

For the reasons stated above, Defendants' Motion to Dismiss is denied. Defendants are directed to file an answer on or before 14 days from the filing of this Opinion.

DATED: 9/26/2024

Marilyn J. Horan
United States District Judge